I'm here on behalf of the appellants, Hughes School District and Earnestine Jackson. This is a case that is an employment discrimination due process case with a little bit of defamation mixed in. We raised four issues on appeal. Whether the evidence was sufficient to support the racial discrimination verdict, whether the evidence was sufficient to support the defamation verdict, whether the damages awarded to Mr. Nassar, excuse me, Dr. Nassar actually, for his lost wages and fringe benefits were excessive and also whether the district court erred in its award of attorney's fees. I'd like to start by focusing on the damages issue. Dr. Nassar presented evidence in this case that his lost back pay, which was his compensation from the point at which he was terminated to the point of trial, was around $195,000. That was $145,000 in lost wages and $50,000 in fringe benefits with an adjustment made for mitigation of damages for the income that he had earned in the interim. That was evidence presented by his expert witness, Dr. Ralph Scott, who's an economist. Dr. Scott also presented evidence in the case of Dr. Nassar's future lost wages and fringe benefits. The problem, though, is that there was no instruction given to the jury on future lost wages and fringe benefits. The only instruction given to the jury for all of Dr. Nassar's claims, which were Title VII, due process, and breach of contract, the only instructions permitted the jury to award damages solely for his lost back pay. There's a good reason for that because under this court's cases, front pay is an issue for the court. It's an equitable issue. It's a substitute for reinstatement. It's an issue for the court. It's not an issue that's submitted to the jury. The district court here, in line with those cases, did not submit the issue of front pay to the jury. When the jury came back with this verdict for $340,000, that was far exceeding the evidence that was presented to the jury for Dr. Nassar's lost wages and fringe benefits. The award here was for the due process violation, right? Yes. Okay. So, wouldn't it be reasonable to assume that having been renewed in the past, that his contract would be renewed again and that some future wages would be lost wages? I think that that might have been possible to be renewed, but it's not an issue that was before the jury at that time. If you look at the instructions that were given to the jury, they were instructed to And so, whatever might have happened in the future was a separate set of issues that was not submitted to the jury. That was not an issue that was at stake in this trial. Was it argued to the jury? I think it was argued to the jury. I think that . . . So, does it matter that it wasn't instructed? I think it does. I think it matters because the jury is supposed to follow the court's instructions. I think that's sort of a first principle of the way that juries are supposed to conduct their business. The court gives instructions to tell the jury what the law is and what the issues are that they're deciding. And in this case, the district court instructed the jury, these are the issues that you're going to decide. And the issue for lost wages and fringe benefits was Dr. Nassar's lost wages and fringe benefits from the date of termination to the date of trial. And that instruction covered all of the causes of action? There wasn't a separate one? There were separate instructions for the various causes of action, but none of them permitted the jury to award damages beyond the date of trial or beyond the end of the contract. The breach of contract instruction is actually referred to the end of his contract. But at no point was the jury asked by the district court to consider the issue of whether Dr. Nassar would have been renewed at the end of his contract. And keep in mind, too, I think that this was a three-year contract that he was in the middle of when he was terminated. He still had a couple of years to go. So that would have been a fairly prospective issue. But at any rate, whatever the right, whether that was right or wrong, or whether that would have happened, it wasn't an issue that the district court presented to the jury. So I think the net result there is that as a result of the jury being confused as to what it was asked to award, it awarded $145,000 too much. It awarded $340,000. The only evidence of Dr. Nassar's lost wages and fringe benefits was Dr. Scott's testimony that it was approximately $195,000. So would front pay be available from the court, in your view? I'm not positive. Looking at the complaint, it does not look like the complaint actually asserted a cause of action for front pay. Now the way the evidence was presented at trial, it does appear that there was, I mean, obviously Dr. Scott went to the difficulty of calculating this out. So it could have been, the complaint could have been amended by the evidence. I think that's probably the case. Would that be open on remand if we agreed with you about the award from the jury? I think that's possible that it could be open on remand, in which case the parties would then argue it and present their evidence about whether it would be appropriate for an award of front pay or discuss reinstatement or whatever those issues would be. But I would like to bring the court back to the point that the issue was not before the I'd also like to briefly, before I leave this issue, there was a suggestion made in the Appelee's brief that this issue was waived, and I don't think that's correct. There was a suggestion that it was waived because it wasn't made as part of a Rule 50 motion. There's no way to raise this as a Rule 50 motion. The question wasn't whether there was sufficient evidence to get to the jury. The question was whether after the jury was instructed and after the jury reached its verdict, did that amount of damages awarded exceed the evidence that was presented to them? That was raised to the district court at the appropriate time in a post-judgment motion. I will be the first to admit that post-judgment motion was not the best post-judgment motion. It could have been done better by trial counsel, but I think it did what it needed to do. It says, and this is on page 162 of the appendix, paragraph 8, it expressly says that the jury's award was excessive because it was in excess of the remainder of the contract. It said that it was against the weight of the evidence, and it said it was not supported by the record. The district court took that issue up in its order and it rejected it, and I think that's what's necessary to raise that issue to this court. It was raised before the district court. The district court ruled on it. It's preserved for appeal. Unless there are any other questions about the damages issue, I'd like to move on to the attorney's fees issue. The attorney's fees issue in this case, after judgment, plaintiffs moved for an award of In their motion for their lead counsel, Mr. Easley, who you're going to hear from shortly, they asserted that his hourly rate is $250 per hour. When my clients responded to that motion, they agreed. They said, that's a reasonable rate for Mr. Easley, $250 an hour. We don't have an issue with that. In the plaintiff's motion, though, they did ask the district court for, I think the way they phrased it, was a fee, quote, in line with their contingent fee agreement, which was considerably more than what the lodestar amount would be. The district court, the opinion in this case is sort of interesting because the district court takes that issue up and acknowledges the rule that the district court cannot enhance the lodestar on the basis of a contingent fee agreement. But then the district court proceeds to enhance the lodestar by increasing the hourly rate. The agreed upon reasonable hourly rate for Mr. Easley from $250 to $375 an hour. There's no justification given in the order for that increase. It just, the district court actually says, well, this addresses the concerns over counsel's investment of time and money, and therefore it's reasonable to do that. And then the court cites several cases that the court asserts supported this increase in the hourly rate, but none of those cases actually support that. They're all for much, much lower rates. But at the end of the day, what it looks like here is that the district court enhanced the lodestar by 50% for the purpose of enhancing and to account for the contingent fee agreement. There's no- Didn't the district court also talk about the experience of the attorney in demonstrating superior legal advocacy skills in this case? And isn't that a sufficient enough reason to increase the amount? I don't think so, Your Honor. The parties agreed that $250 an hour was appropriate. There was no showing but in the district court's order or in any of the record that $375 an hour is a reasonable amount in this market. And the district court's findings on that are also somewhat more equivocal. The district court points out that the issues in this case were not novel. There was nothing particularly difficult about these issues. It wasn't a protracted case where there were difficult issues to resolve. And at the end of the opinion, the district court also notes that it's difficult to discuss these issues because I don't want to denigrate my opposing counsel. But she says in there in the opinion that the services rendered were not exceptional. They didn't justify an enhanced award because they weren't exceptionally, you know, above and beyond what you would expect of counsel in this case. So I think that the findings on the quality of work done were somewhat equivocal and I don't think they justify this substantial increase. This is a very substantial increase. This moved the amount of fees from approximately $86,000 to $130,000. It's an increase of $43,000. It bumped it by half. And under the circumstances, I think the district court abused its discretion in doing that. There's just no sufficient justification given in the order for why it was necessary to bump the hourly rate used to calculate the Lodestar by 50%, particularly when the parties had agreed that $250 was a reasonable rate. And so we would ask the court to reverse that award and reduce it to what the parties agreed upon was a reasonable rate. Unless the court has additional questions on those issues, I'd like to reserve the remainder of my time for rebuttal. Very well. Thank you. We'll next hear from your adversary. Good morning, Your Honor. Mr. Eesley, right? Eesley, yes, sir. Yes, sir. That's all right. Judge, I was trial counsel in this case. I'm going to go in reverse. I'm going to talk about the fee issue first, the police court. I told the court in an affidavit that my regular hourly rate was, in fact, $250. The court invoked the Lodestar method, did not, as counsel suggests, increase the $250. I didn't admit that $250 was Lodestar. The court didn't find that $250 was Lodestar. $250 is one of the factors considered in fixing a fee. And, in fact, the U.S. Supreme Court has said in Perdue v. Kennedy, that it's a multifactorial issue, this issue of attorney's fees. There's a strong presumption that the Lodestar calculation is reasonable in and of itself. The court, in that case, did find that we had done at least a better than average job, I think. We had a difficult issue. We tried it for three or four days. There was considerable time expended. I did list with particularity the things that we did and the amounts of time that we spent. There's an allegation we didn't do that. That's not true at all. I think the court sees my affidavit or has seen it and knows it is very specialized as to what we did. Under the Perdue v. Kennedy A decision by the Supreme Court, the calculation is reasonable in and of itself. A reasonable fee is a fee sufficient to induce a capable attorney to undertake the representation of a meritorious claim. Number two, the Lodestar method yields a fee that is presumptively sufficient to achieve the objective identified in the first rule. Number three, enhancements to the Lodestar calculation may be awarded in rare and exceptional cases, and an enhancement may not be awarded based on a factor that is subsumed in the Lodestar calculation. The burden of proving that an enhancement is necessary must be borne by the fee applicant, and a fee applicant seeking an enhancement must produce specific evidence that supports an award. As the court is well aware, all of these issues are matters of discretion for the trial court. The trial court sat there, saw what we did, saw what we were faced with, and set the Lodestar method. And, again, I say the admission by a defense counsel does not mean that's Lodestar. So I think their argument is flawed there. Well, I think their argument is that you argued the contingency fee rate, and the judge recognized, I guess, that she cannot use that to adjust, but then, in effect, did so. That's the argument. Well, she didn't really because she figured what the rate would have been. It would have been $440, she said. Yes, $440, and she reduced that. Now, under Arkansas law, and if this is a contract action, it's undifferentiated as to whether the fees were based on racial discrimination. I saw you argued we could just affirm on the Arkansas law part. I'm sorry, sir? You argued we could affirm because, under Arkansas law, the contingency is a permissible factor. Yes, sir, exactly. So you think that's what she did? Do you think she was applying Arkansas law and gave you an increase based on the fee? Judge, I don't know. That would be speculation. I would say this, and I didn't put this in my affidavit, perhaps I shouldn't argue it, but I do a lot of contingency fee work, and if I divided it out, I think I'd do better than what she gave me even on contingency work, but that's not in the record. Your Honors, as to the damages issue, we have waiver upon waiver upon waiver here. Mr. Martz mentioned trial counsel. Trial counsel made no objection to the testimony by the expert as to future damages, none. At the conclusion of the proof, there was no objection to it. The single objection was that he hasn't met his burden, period. At the conclusion of the proof, there was no specific suggestion that anything improper had come in by way of damages. The instructions to the jury went to the jury essentially without objection and certainly without objection on this issue, and for the first time. Well, why would they object if the instructions limited it to just the contract period of time? Why would they object to that? Judge, I'm sorry. You're saying that they didn't object to the instructions, but if, as counsel suggests, the instructions limited the damages to the contract period, why would they object? Well, they wouldn't have an opportunity to. I see your point. Why would they object to the testimony? Are you saying that the front pay testimony should be in a separate proceeding and not even presented to the jury? I don't know the answer to that. Well, then maybe they didn't object because it's proper evidence. It's just for a matter that's to be decided later by the court. But they didn't ask for that. There was not a motion for that. They didn't ask for it at trial. They didn't ask for it after trial. It's a complete and total waiver on the issue. Now, Judge Grunt. I'm sorry. Judge Cosner. Well, you say they didn't ask for it. But I think he does point to this post-trial motion where they said that the award exceeded the remainder of the contract. Yes, sir. There is that objection at number eight. Yeah. Page 162. Yes, sir. So why shouldn't you have to go back and argue the front pay to the court? Judge. What's wrong with that? You could still get the money if it's supported by the evidence. It just needs to be decided by the court instead of the jury. You know, I thought that's where the court would be going when I prepared for this argument. All right. Well, you must have a good answer. Well, here's my answer. There were damages in this case that went way above and beyond the front pay. There was an issue that Mr. Nassar had tried something like a hundred places, a hundred places to get employment. And because he had been fired for this supposed racial discrimination, he was unable to get those jobs, and he had to take jobs which are of a lesser value, which, in fact, happened. He went to a very small district, obtained $17,000 less per year. Essentially, he was tainted not only by these all kind of mixed together, Judge Carlton, not only was he tainted by the firing, he was tainted by the allegations that were defamatory toward him. And so he wound up with way less than he ever should have in the first place. Best thing I can tell you on that, Judge, the jury heard all of this, and it was because of the defamation and the discrimination, he had family problems. But the award was made on the due process claim, right? Yes. So I don't think you can lump in the defamation and all that to justify it, can you? The award was made on the due process, but I also believe, Judge, it was made on the race discrimination. I thought that was a dollar or something like that, but maybe I'm misremembering. Yes, but there was an award. Well, what's the proper measure of damages on a due process violation? On a due process violation? I assume the theory was they didn't give him a hearing before they fired him. Yes. So what's the proper measure of damages for that claim? The loss of his earnings, not only past but future. And how far into the future? Seven years is permissible by most decisions. Is there a case that says that? I'm sorry, sir? Is there a case that says that? Yes, there is. I can't quote it to you, but I instructed our economist, Dr. Ralph Scott, to limit. Well, I think he gave lifetime, but I said be sure that you testify about seven years because cases hold that, and he did, in fact, testify to seven years. And do the cases say, then, that that's a front pay determination that the court should make, or is that something that the jury can do? There is a case. It is the Saletus or something like that. Salitros. Salitros. Salitros case. Eighth Circuit case. Yes, sir. Eighth Circuit case. And it does allow front pay of seven years, and it does, as a matter of fact, in that case, the trial was based upon the trial court issuing the front damage determination. The challenge was made in Salitros as to how that was done. This court affirmed how. So your argument here is by allowing that to go to the jury, they've waived that, having the judge make it? Yes. It was never brought up to the trial court. Nobody ever presumed that the trial court would issue front pay. Your Honors, I have some time left, but unless you have any other questions, I'm going to sit down. Thank you very much. Yes, sir. Thank you, Judge. We will now hear next from. I'd like to address a few of the issues that Mr. Easley brought up. The reference to Arkansas law as a justification for the attorney's fees award is somewhat odd to me because in the discussion in the district court's opinion of what the attorney's fee was going to be, there is no discussion of Arkansas law. All of the cases that the court cites, when it gets down to the business of actually determining what the fee is going to be, are federal court cases. There is no discussion of those Arkansas law cases. But if the district court had discussed those, it might have started by citing Allways Logistics Incorporated v. USA Truck, which is a case from this court, where the court said, clearly, the fact that there's a contingent fee agreement under Arkansas Code Annotated 1622308 does not automatically entitle the prevailing party to an award of that amount. It has to be considered amongst the other factors. So to the extent that Arkansas law would justify that, it can't justify that unless the district court went through the other factors, what the Arkansas Supreme Court refers to as the CRISCO factors for determining an award of an attorney's fee. So that's not a justification for what the district court did in this case, and it doesn't support an affirmance of the fees awarded. Moving to the damages issue, when Mr. Easley points out what the defendants didn't ask for in this case with regard to the front pay damages, I'd point out that plaintiffs didn't ask for an instruction on front pay either. And there's a reason for that, because it's not appropriate to submit to the jury. But they didn't press that issue in terms of trying to get that issue instructed to the jury. There was no reason for our clients to object to those jury instructions because they were proper jury instructions. They set forth the law based upon the facts of the case. There was no grounds for an objection. There was no point at which that issue could be raised until after a verdict was entered. That was excessive. Mr. Easley cited the Solitros case. I'd point out that that case also reaffirms the principle that front pay is an issue for the court and not the jury. In the end, defendants did not allow the issue of front pay to go to the jury because it didn't go to the jury. The jury awarded those damages, but at the end of the day, there was no instruction on them. And therefore, that verdict is excessive, and we'd ask the court to reconsider. If the evidence was presented, and I assume it was argued at closing argument to include that additional amount, wouldn't that have been a good time to stand up and say, you can't do that, and that has to be done by the court? Had I been in the shoes of the trial counsel, I would have certainly objected. And I wonder, is it really even properly characterized as front pay? In other words, this is a due process violation, so I think the measure of damages is sort of what would have happened had he been given a hearing and presumably not fired. It seems to me the measure of damages may well be going forward for some period of time. Do you have a case that says that's front pay? Maybe it is. I think that under the way that the court has defined back pay and front pay in the past, back pay is the pay that you would have received up to the point of trial. Anything that goes beyond that is front pay. Up to the point of trial, or up to the point of discharge? Well, it's from discharge up to the point at which the person would have been discharged, or up to. . . is that back pay is the amount that you would have received from the date on which you were terminated from your employment to the date of trial, which is the necessary cutoff. Now, I think it could probably, in this instance, because this is a case where there's a contract in play, I think it would go to the end of the contract. And that is the damages that Dr. Scott testified to. So you're saying the $195,000 includes going forward to the end of the contract? Yes. But the only way you can get to $300,000 is to factor in future employment by the plaintiff? I think that's exactly right, Your Honor. And I think that the best demonstration to that is in Plaintiff's Brief on Appeal, where they actually provide a very helpful chart that sets forth the amounts. And that chart shows that the only way that you get to $340,000 is to include amounts for damages that go beyond the end of the contract. But if he was . . . let's say that it was a ten-year contract and the trial gets fired after year one. The trial occurs in year three. Are you saying that the jury couldn't somehow, after applying mitigation and things like that, couldn't issue an award for years three through ten? That would all be front pay even under a contract theory? No, I don't think that's accurate. I think I was giving the definition of back pay and front pay that normally applies. I think in this instance, with a contract being in place, and there being a finding that the plaintiff was discharged without due process, and that he would not have been . . . If you look at the findings, the jury found he was discharged . . . Well, actually, the jury didn't find he was discharged without due process. That was actually an issue where the district court granted summary judgment. But the jury did find that he would not have been terminated even had he been given a proper hearing. And I think under that circumstance, it's appropriate to award the damages for the remainder of the contract. So if you had that ten-year contract, I think it probably . . . And I'll admit that I'm somewhat unprepared on that issue, but I think that it would be appropriate in that instance to award the full amount of the contract. The court doesn't have anything else for me. Very well. Thank you.